**In re LAWSON SQUARE, INC., Debtor.**

**FIRSTSOUTH, F.A., Plaintiff,**

v.

**LAWSON SQUARE, INC., Defendant.**

Bankruptcy No. FA85–146.
Adv. No. CMS 86–162.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

May 14, 1986.

James J. Glover, Little Rock, Ark., for debtor.

Richard L. Ramsay, Pine Bluff, Ark., for plaintiff.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Bankruptcy Judge.

Pending before the Court for decision following the hearing in the above-styled matter on April 21, 1986, is the issue of whether the January 26, 1984 loan made by FirstSouth, F.A., ("FirstSouth") to Lawson Square, Inc., the debtor, is usurious. In order to resolve that issue it must first be determined whether the Depository Institutions Deregulation and Monetary Control Act of 1980 ("Monetary Control Act")[1] has preempted Arkansas's usury limitations set forth in Amendment 60[2] for a loan made in this State by a federally insured institution after March 31, 1980 and secured by a first lien on residential real property.[3]

---

1. Pub.L. No. 96–221, 94 Stat. 132.

2. Ark. const. art. 19, § 13 ("Amendment 60").

3. Based upon the evidence presented at the April 21, 1986 hearing on FirstSouth's "Motion for Relief from the Stay and/or Adequate Protection," the Court ruled from the bench that, provided the promissory note evidencing the underlying indebtedness is not usurious, the value of FirstSouth's collateral securing the said promissory note is less than the amount First-South proved its debt to be on the note. Consequently, the Court found that, absent usury, there is no evidence of equity or equity cushion to provide adequate protection of FirstSouth's interest in the collateral. The Court further ruled that no evidence had been offered indicat-

ing that the debtor could, through any other means, provide the adequate protection required by 11 U.S.C. § 362(d) to prevent the Motion for Relief from being granted. Therefore, the Court has ordered that the Motion for Relief will be granted unless the interest charged by FirstSouth on the subject promissory note is found to be usurious. The Court based its holding upon proof by the debtor that, pursuant to both federal and state statutes regarding applicable penalties, if usury is present, the amount of the debt owed to FirstSouth on the questioned loan will have to be reduced by an amount totalling twice the interest paid by the debtor. Such reduction would decrease the debt owed by the debtor to such an extent that the debtor would have substantial equity in the

It is the debtor's position that subsection (a)(i) of Amendment 60 is controlling. The debtor contends that the loan in issue is usurious because several times during the term of the loan the interest rate on the loan exceeded the ceiling allowed by that subsection, i.e., "5% per annum above the Federal Reserve Discount Rate at the time of the contract." The debtor also contends the loan is usurious because various charges such as "release fees" under the loan are in fact interest which also result in an interest charged in excess of Arkansas's ceiling.

It is FirstSouth's position that subsection (a)(i) of Amendment 60 is not controlling. Rather, FirstSouth contends that, pursuant to subsection (d)(ii) of Amendment 60, the controlling provisions are federal, specifically 12 U.S.C. §§ 1730g and 1735f–7 (note), provisions of the Monetary Control Act. FirstSouth submits further that the loan in issue is not subject to any interest limitation.

After consideration of the evidence before it, the Court concludes that subsection (d)(ii) of Amendment 60 and U.S.C. §§ 1730g and 1735f–7 are controlling under these facts. The loan in issue is therefore not usurious.

The decision is based upon the following findings of fact and conclusions of law.

### Findings of Fact

On January 26, 1984 the debtor executed several documents evidencing the loan made to the debtor by FirstSouth. The documents included: a Loan Agreement with Amendment, a Promissory Note ("Note"), a Mortgage securing the Note, and a Security Agreement.

The security for the loan from First-South (which is insured by the Federal Deposit Insurance Corporation) to the debtor is a first lien on residential real property in Fayetteville, Arkansas. The parties have stipulated that the transaction is a residential loan. The collateral for the loan includes a condominium project, four rental houses and a vacant lot zoned for a multi-family dwelling.

The Note, in the sum of $1,705,800.00, has a floating interest rate not to exceed 4% over the rate payable on a 90-day Treasury Bill on dates specified in the Note.[4]

The parties also stipulated to the following additional facts:[5]

1. The rates on 90-day commercial paper in the St. Louis Federal District ("Federal Reserve Discount Rate") and on 90-day Treasury Bills varied during the term of the Note as follows:[6]

| Date | Federal Reserve Discount Rate | 90–Day Treasury Bill |
|------|---|---|
| 3/30/84 | 8.5 | 9.72 |
| 7/31/84 | 9.0 | 10.40 |
| 8/31/84 | 9.0 | 10.63 |
| 9/28/84 | 9.0 | 10.22 |

2. The amendment to the Loan Agreement, executed in connection with the 1984 Loan, provides for payment of certain "release fees" in addition to the interest payable under the terms of the Note. Those sums to be paid by the debtor include (1) a $1,000.00 "release fee" to be paid to First-South upon the sale of any unit of the collateral and (2) a payment of 105% of the

collateral. The equity could then serve to adequately protect FirstSouth's interest therein, making it unnecessary for this Court to grant relief from the stay.

4. The Note provides for interest to be charged as follows:

[A] rate of interest changing on the first day of each calendar month after the date hereof ("the Effective Date") at the rate of interest payable on a 90-day Treasury Bill on the day immediately preceding each Effective Date plus 4% per annum.

5. These facts are not relevant in view of the Court's holding that there is no usury ceiling applicable to the loan in question.

6. The Court notes that there was no stipulation or other evidence as to the Federal Reserve Discount Rate or the 90-Day Treasury Bill rate on January 26, 1984, the date the Note and other loan contracts were executed. Arkansas's Amendment 60(a)(i), upon which the debtor relies for its position that the loan is not usurious, states that "the maximum lawful rate of interest ... shall not exceed ... (5%) per annum above the Federal Reserve Discount Rate at the time of the contract."

appraised value of each unit released from the Mortgage.

## Conclusions of Law

The relevant state constitutional provisions and federal statutes to be construed by the Court are as follows:

### Arkansas Constitution

#### Amendment 60

\* \* \* \* \* \*

(a) General Loans:
(i) The maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract.

\* \* \* \* \* \*

(d) *Miscellaneous*
(ii) The provisions hereof are not intended and shall not be deemed to supersede or otherwise invalidate any provisions of federal law applicable to loans or interest rates including loans secured by residential real property.

\* \* \* \* \* \*

Ark. Const. art. 19, § 13. (Amendment 60, passed at the General Election on Nov. 2, 1982).

### Monetary Control Act[7]

**§ 1730g. Insured savings and loan associations.**

**(a) Interest rates**

If the applicable rate prescribed in this section exceeds the rate an insured institution (which, for the purpose of this section, shall include a Federal association the deposits of which are insured by the Federal Deposit Insurance Corporation) would be permitted to charge in the absence of this section, such institution may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan ... mortgage, or upon any note, ... interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such institution is located or at the rate allowed by the laws of the State ... where such institution is located, whichever is greater.

**(b) Interest overcharge; forfeiture; interest payment recovery**

If the rate prescribed in subsection (a) of this section exceeds the rate such institution would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate of interest than that prescribed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carried with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover, in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from the institution taking or receiving such interest.

12 U.S.C. 1730g (Pub.L. 96–221, as amended by Pub.L. 97–457, § 33).

**§ 1735f–7. Exemption from State usury laws; applicability**

\* \* \* \* \* \*

---

**7.** The legislative history of the Monetary Control Act reveals that the Act was passed to alleviate problems in states like Arkansas in which the low usury ceilings frequently meant the maximum allowable contract rate fell well below the market levels of interest. That meant banks would have to borrow money to loan applicants for residential loans at rates greater than they could then charge their borrowers. The state's low usury limits then led to a scarcity of mortgage funds in the state and caused a stagnation of the housing industry. S.Rep. No. 368, 96th Cong., 2d sess., U.S.Code Cong. & Admin.News 1980, p. 254.

**Historical Note**

State Constitution or Laws Limiting Mortgage Interest, Discount Points, and Finance or Other Charges; Exemption for Obligations Made After March 31, 1980. Pub.L. 96–221 ... as amended ..., provided that:

"(a)(1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—

"(A) secured by a first lien on residential real property ...;

"(B) made after March 31, 1980; and

"(C) described in [12 U.S.C. § 1735f–5(b)], except that for the purpose of this section—

"(i) the limitation described in [§ 1735f–5(b)(1)] that the property must be designed principally for the occupancy of from one to four families shall not apply;

* * * * * *

12 U.S.C. § 1735f–7, note.

In analyzing subsection (a)(i) of Amendment 60 the Court finds that its language clearly provides a usury ceiling on any contract for general loans within the state. The language of the "miscellaneous" provisions found in subsection (d)(ii) of Amendment 60 is also clear and unequivocal that the ceiling is not intended to apply to loans secured by a first lien on residential real property.

[redacted] The Monetary Control Act contains a specific provision granting states the option to override the federal usury preemption. Pub.L. 96–221, Title V, § 501(b)(2). However, the override period was limited to the three years after April 1, 1980 and before April 1, 1983. During that period states were given the power to override the federal preemption by either adopting a law or certifying that the voters of the state had voted in favor of a provision which explicitly stated that the state did not want the federal mortgage usury preemption to apply in that state. *Id.* However, Arkansas did not elect to override the federal preemption of the state's usury ceiling and the right to do so has now expired.[8] Ark. Const. art. 19, § 13 (Amendment 60). Subsection (d)(ii) of Amendment 60, enacted during the override period, clearly reflects the State's intention to allow the federal preemption to stand. *Accord, Troutt v. First Federal Savings and Loan of Hot Springs,* 280 Ark. 505, 659 S.W.2d 183 (1983); *Bank of Evening Shade v. Lindsey,* 278 Ark. 132, 644 S.W.2d 920 (1983). *See also McInnis v. Cooper,* 271 Ark. 503, 611 S.W.2d 767 (1981) (discussing purpose of Monetary Control Act).

Thus, the federal preemption provisions of the Monetary Control Act do control this loan which falls squarely within the loans to be governed by § 1735f–7 (note) and Amendment 60: it was a loan made by a federally insured savings and loan, after March 31, 1980, secured by a first lien on residential real property.

Consequently, when determining which of the two permissible rates contained in 12 U.S.C. § 1730g(a) is the greater and, thus, the controlling rate, it is noted that Arkansas's usury ceiling has been preempted. Thus, the state's unlimited rate would be the greater and as such, would be the rate applicable here.[9] Therefore, the transac-

**8.** In fact only fourteen states have chosen to override portions of the federal usury preemptions: Colorado, Georgia, Hawaii, Iowa, Kansas, Massachusetts, Minnesota, Nebraska, Nevada, North Carolina, Puerto Rico, South Carolina, South Dakota, Wisconsin. *See Federal Banking Law Reports,* CCH Para. 58,910 (1985).

**9.** To date no other court has analyzed §§ 1730g and 1735f–7, (note) together in directly addressing the issue now pending. However, one state court has indicated in dicta what its position would be if § 1730g were found applicable:

> The bank further argues that, irrespective of the treatment afforded the commitment fee, the loans were not usurious under the federal act. In making this assertion, the bank places particular emphasis on two separate sections of the act—12 U.S.C. §§ 1735f and 1730g. Both sections provide, in essence, that state

tion involved here is not usurious since it is, in effect, not subject to any usury ceiling.

Because the federal preemption provision applies, making any usury limit inapplicable, it is not necessary for the Court to address the remaining usury arguments presented by the debtor concerning whether the various "release fees" are, in fact, interest or whether the floating contract rate itself caused the interest charged to rise above a permissible state ceiling.

■ The Court recognizes that the debtor also argues that the federal preemption provision is intended to apply only to loans secured by residential real property purchased by its occupants with the proceeds of the loans. Therefore, according to the debtor, the loan made by FirstSouth in this case does not qualify for the preemption statute because it is a "business loan" to a "commercial developer." The federal statute makes no such qualification. Indeed, the preemption statute plainly states it applies to any loan or mortgage secured by a first lien on residential real property. § 501(a)(1), 12 U.S.C. § 1735f–7 (note).

■ The Court also notes that the Federal Home Loan Bank Board has issued an opinion in regard to another argument apparently raised by the debtor. The debtor contends that the federal exemption statute does not apply to the type loan involved here because a first lien on undeveloped property is included in the security. In Opinion No. S2, delivered by the Board on January 22, 1981, the issue addressed is whether a loan made for the purpose of developing raw land into residential lots qualifies for preemption if a first lien is taken on the property. The Board ruled that such a loan could qualify for the preemption statute. The Arkansas Supreme

Court has relied upon Federal Home Loan Bank Board opinions in the past. *See, e.g., Bank of Evening Shade v. Lindsey,* 278 Ark. 132, 644 S.W.2d 920 (1983). That reasoning would be applicable in this case since the undeveloped land in question is zoned for multifamily dwellings, *i.e.,* for residential purposes.

### Conclusion

The United States Congress and the Arkansas Legislature, with the approval of the State's voters, have provided the laws preempting the usury ceiling for residential loans like the one now before the Court. At this point, any change to set an interest ceiling on this type residential loan would have to be made by the United States Congress. This Court is not free to substitute its judgment for the wisdom of Congress or the State and its voters.

Orders in accordance with this Memorandum Opinion and with the findings of fact and conclusions of law read into the record on April 21, 1986 will be entered.

---

usury ceilings are suspended for certain kinds of loans and section 1730g (upon which the bank places the greatest emphasis), if applicable would permit the bank to charge interest without interference from *any* usury ceiling. Unfortunately, however, the bank failed to cite either of these provisions to the trial court. Consequently, they cannot be considered on appeal.

*First Am. Bank v. Windjammer Time Sharing,* 483 So.2d 732, 737 (Fla.App. 4 Dist.1986) (emphasis in original). It appears, then, that the Florida Appellate Court, Fourth District, would agree with this Court's conclusion that a usury ceiling is not always applicable.