ARNOLD, Circuit Judge.
 

 This ease requires us to determine what legal ceiling, if any, exists for interest rates on loans secured by a first lien on residential real property in Arkansas. We hold that the governing statute is Section 501(a)(1) of the Depository Institutions Deregulation and Monetary Control Act of 1980, 12 U.S.C. § 1735Í-7 note, and that there is no legal limit on interest rates on loans secured by a first lien on residential real property in Arkansas, so long as the requirements of that Section are met.
 

 I.
 

 Lawson Square, Inc., a developer of residential real estate, conceived a project to purchase an apartment complex in Fayette-ville, Arkansas, modify the apartments, and resell them as condominiums. In order to finance the purchase and the costs of resale, Lawson Square obtained a loan from FirstSouth, F.A., a federally insured savings and loan association which had its principal place of business at Pine Bluff, Arkansas. The one-year promissory note, which was executed on January 26, 1984, was in the amount of some $1,700,000, and was secured by a first mortgage on the premises of the condominium project. Interest on the note was contracted at a variable rate, to be set monthly at four per cent, above the rate payable on a 90-day Treasury Bill on the last day of the preceding month. A subsequent amendment to the agreement allowed FirstSouth to collect a $1,000 “release fee” upon the resale of each unit, and to recover 105% of the appraised value of each unit as a payment on principal upon resale and release from the lien.
 

 Lawson Square eventually ran into financial difficulties, defaulted on the note, and filed a Chapter 11 petition in Bankruptcy Court. FirstSouth sought relief from the automatic stay; Lawson Square resisted the motion, alleging that the contract interest rate was usurious; the Court granted relief to FirstSouth. From the Bankruptcy
 
 *1238
 
 Court’s
 
 [1]
 
 decision of May 14, 1986, 61 B.R. 145 (Bankr.W.D.Ark.1986), affirmed by the District Court
 
 [2]
 
 in an unpublished opinion on August 12, 1986, Lawson Square appeals. Both courts below held the loan not usurious. For the reasons which follow, we affirm.
 

 The Bankruptcy Court ruled that, assuming the promissory note was not usurious, the amount of the debt exceeded the collateral, and the motion for relief from the automatic stay would be granted. Lawson Square does not dispute this ruling. The only question before us is whether the contracted rate of interest (Treasury-Bill rate plus four per cent.) exceeded any limitation on interest rates which might be provided by Arkansas or federal law. Under both the Arkansas usury limit and the federal limit which Lawson Square claims may apply, unpaid interest on a usurious contract is forfeited, and interest already paid may be recovered in a double amount. If this contract were in fact usurious, the forfeiture of unpaid interest and double recovery of interest already paid might bring the total amount of indebtedness within the value of the collateral. In that case, the creditor would be adequately protected, and denial of the creditor’s motion for relief would have been appropriate.
 

 II.
 

 Amendment 60 to the Arkansas Constitution (now found at Ark. Const. Art. 19, § 13) provides that for “General Loans” (a term which, apart from federal law, would include the present loan) “[t]he maximum lawful rate of interest on any contract entered into after the effective date hereof shall not exceed five percent (5%) per an-num above the Federal Reserve Discount Rate at the time of the contract.” Ark. Const. Art. 19, § 13(a)(i). If this provision governed, the present loan would be usurious.
 
 [3]
 

 The parties agree, however, that the applicability of Amendment 60 is affected in some way by the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub.L. 96-221, 94 Stat. 132. They disagree as to which part of the Act is relevant, and its effect.
 

 The Act was a comprehensive overhaul of the national scheme of regulation of banks and other lending institutions. Congress was especially concerned about hardships which the unusually high interest rates of that time wrought on financial institutions in states with strict usury laws, and, as a consequence, on potential borrowers who found it difficult to get money. The former usury limit in Arkansas
 
 [4]
 
 (10% on all loans) was particularly mentioned in Congressional debate. See,
 
 e.g.,
 
 126 Cong. Rec. 6906 (1980) (statement of Sen. Pryor). Of the five separate preemptions of state usury limits included in the Act, two are
 
 *1239
 
 applicable to the type of transaction in this case.
 

 The first, Section 522 of the Act, applies to any loan made by a federally insured savings and loan association. It provides that
 

 [i]f the applicable rate prescribed in this section exceeds the rate an insured institution (which, for the purpose of this section, shall include a Federal association the deposits of which are insured by the Federal Deposit Insurance Corporation) would be permitted to charge in the absence of this section, such institution may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such institution is located or at the rate allowed by the laws of the State, territory, or district where such institution is located, whichever may be greater.
 

 12 U.S.C. § 1730g(a).
 

 The second provision of the Act which we must consider is Section 501, which is entitled “Mortgage Usury Laws; Mortgages,” and reads in pertinent part as follows:
 

 (a)(1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—
 

 (A) secured by a first lien on residential real property, by a first lien on all stock allocated to a dwelling unit in a residential cooperative housing corporation, or by a first lien on a residential manufactured home;
 

 (B) made after March 31, 1980; and
 

 (C) described in section 527(b) of the National Housing Act (12 U.S.C. 1735f-5(b)), except that for the purpose of this section—
 

 (i) the limitation described in section 527(b)(1) of such Act that the property must be designed principally for the occupancy of from one to four families shall not apply;
 

 (ii) ...
 

 12 U.S.C. § 1735Í-7 note.
 

 The two provisions quoted above are not totally exclusive of each other; for certain loans, they overlap. Section 522 can apply to any loan, to be used for any purpose, so long as the lender is a federally insured savings and loan association; Section 501 can apply only to loans or mortgages which are secured by first liens on the kinds of residential property mentioned in that section, but the source of the money may be any of a number of types of financial institutions.
 

 Lawson Square insists that the first provision applies, but not the second; First-South says that the second, but not the first, applies; it is also conceivable that both apply, or neither. The possible results are as follows: (1) if Lawson Square, the debtor, is correct, and Section 522 applies here, then by the terms of that section we must look to Arkansas Amendment 60 for the legal limit of interest which may be charged. That limit is the federal discount rate plus five per cent., and the loan would be usurious. See note 3
 
 supra.
 
 (2) If FirstSouth, the lender, is right, then the “limit” of Section 501,
 
 i.e.,
 
 no limit at all, applies, and the loan is of course not usurious. (3) If both provisions apply, then Section 528 of the same Act provides that the higher of the two rates, that is, the Section 501 “no limit,” must prevail. (4) If neither federal preemption section fits, then we must apply the Arkansas law.
 

 Once we have described the labyrinth, its solution is straightforward. We look first to the words of Section 522, noting at the outset that it is contained in “Part C: Other Loans” (as distinguished from “Part A: Mortgage Usury Laws” and “Part B: Business and Agricultural Loans”). Assuming for the moment that those two parts do not apply, we note immediately that the very first clause of Section 522 reads as follows: “[i]f the applicable rate prescribed in this section exceeds
 
 *1240
 
 the rate an insured institution ... would be permitted to charge in the absence of this section The “applicable rate” referred to is the federal discount rate plus one per cent.; the rate that would be permitted in the absence of this section is the Arkansas Constitution’s present limit of federal discount rate plus five per cent. Attempting to substitute these terms for the words which represent them produces a false statement, for in fact the “applicable rate” does not exceed the “permitted rate.” That being the case, we need go no further in Section 522; we know that it does not apply in this instance.
 

 Section 501 completely overrides state usury limits for mortgages and other financing arrangements which are secured by first liens on residential real property. Lawson Square and FirstSouth have stipulated that this loan is secured by “a first lien on residential real property.” District Court Joint Ex. 1. Having preempted any State usury limitations over such loans, Section 501 does not impose a federal limit. It does, however, allow a state to reassert a usury limitation through passage of a law or initiated measure “which states explicitly and by its terms that such State does not want the provisions of subsection (a)(1) to apply with respect to loans, mortgages, credit sales, and advances made in such State.” Pub.L. 96-221, § 501(b)(2), found in 12 U.S.C. § 1735Í-7 note. The Legislature and voters of Arkansas had the opportunity to override Section 501 when they considered Amendment 60 in 1982. But instead of reasserting a State usury limit on mortgage interest rates, that amendment included a section which specifically endorsed the federal preemption. It reads as follows: “The provisions hereof are not intended and shall not be deemed to supersede or otherwise invalidate any provisions of federal law applicable to loans or interest rates including loans secured by residential real property.” Ark. Const. Art. 19, § 13(d)(ii), as amended 1982. The result of Section 501’s federal preemption of State usury laws as to residential real property loans, and Arkansas’s choice not to reassert a limit, is that there is
 
 no limit
 
 on the legal rate of interest which may be charged on such a loan in Arkansas, so long as the loan is secured by a first lien and the other requirements of Section 501 are met. It follows that, if the loan in question on this appeal is secured by “residential real property,” there is no legal limit on interest, the loan is not usurious, and the courts below were correct in relieving FirstSouth from the automatic stay.
 

 III.
 

 Lawson Square, however, has another string to its bow. In addition to its argument, just rejected, that Section 501 does not apply at all in the present situation, it also argues that the loan involved in this case is not a loan “secured by a first lien on residential real property” within the meaning of Section 501(a)(1)(A). It points out that this loan was obtained by a builder or developer of residential real property, as opposed to an individual resident owner. It points to a statement made on the floor of the House of Representatives immediately before the vote by which the House agreed to the conference report on the bill that became Public Law 96-221. The colloquy relied on went as follows:
 

 MR. MATTOX. Mr. Speaker, the next question is this: Does a loan issued to a builder, a homebuilder, for the purpose of constructing residential dwellings for the purpose of resale to homebuyers constitute a business loan, or is it a residential loan?
 

 MR. ST. GERMAIN. Mr. Speaker, this would be business financing. It is a business loan in that there is indeed interim financing: Therefore, it would be a business loan.
 

 126 Cong.Rec. 6983 (1980).
 

 It might be thought, and indeed FirstSouth argues, that this contention is foreclosed by the stipulation of the parties that the loan was secured by “a first lien on residential real property.” On the other hand, the stipulation could, we suppose, be read simply as an agreement that the property was “residential” in fact, that is, that structures in which people lived, or were to live, had been built on it, thus leaving open the question of law whether the property was “residential” as that term is used in Section 501(a)(1)(A). As a rule, stipulations are not considered binding as to issues of
 
 *1241
 
 law, and it is conceivable that even a word like “residential,” which has a well-understood meaning in the world, as opposed to in court, might have been used by Congress as a term of art.
 

 We consider then the meaning and legal effect of the colloquy between Mr. Mattox and Mr. St. Germain. We note first that the meaning is somewhat uncertain as applied to the particular facts of the case before us. The question put by Mr. Mattox appears to contemplate property on which no residential dwellings exist at the time of the loan. He refers to a loan issued for the purpose of “constructing residential dwellings.” In the present case, by contrast, there was already an apartment complex on the property in question. The purpose of the loan was simply to modify the apartments so that they would be attractive for purchase as condominiums. If property on which an apartment complex is already located is not “residential,” it is hard to see what would be. It is, on the other hand, entirely possible that property on which dwelling units are to be, but have not yet been, built, might be considered as something other than “residential” at the time of the loan.
 

 There are other difficulties with the use of legislative history of this kind. The statement, whatever its meaning, may not have been heard by many members of the House of Representatives, and was certainly not heard by any members of the other body, which agreed to the conference report on the same day, March 27, 1980. We think the safer course is to read the statement narrowly, as applying only to property on which no dwelling units existed at the time the loan was made. To read it more broadly would bring it into arguable collision with the plain words of the statute, and when these words are clear, it is often said that legislative history may not be resorted to.
 
 E.g., United States v. Missouri Pacific R. Co.,
 
 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929). Perhaps, as some law professors are fond of saying, there is no such thing as unambiguous words. But here, even if there is some arguable ambiguity in the statute, there is also ambiguity in the legislative history, and the words of the statute, if not absolutely plain, are plainer than the words of the colloquy between Mr. Mattox and Mr. St. Germain, in the present context. Whatever doubts exist should be resolved, we think, by interpreting the colloquy narrowly, so as to avoid a conflict between it and the most natural reading of the words of the Act.
 

 We conclude, therefore, that the loan involved here was secured by a first lien on residential real property within the meaning of Section 501, that this provision, rather than Section 522, is the governing law, and that the State of Arkansas has not overridden the federal preemption of interest-rate limits contained in Section 501. Accordingly, the interest charged on this loan was legal, and the judgment of the District Court, affirming the judgment of the Bankruptcy Court, is
 

 Affirmed.
 

 [1]
 

 . The Hon. Robert F. Fussell, Chief United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.
 

 [2]
 

 . The Hon. H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.
 

 [3]
 

 . During at least four months during 1984, the floating rate of interest charged on this loan exceeded the maximum rate allowable under the unmodified provisions of Amendment 60(a)(i), as is shown in the following chart:
 

 Discount T-Bill Amendment Date Rate Rate 60 limit (discount rate +5%) Actual Rate (T-Bill rate +4%)
 

 3/30/84 8.5% 9.72% 13.5% 13.72%
 

 7/31/84 9.0% 10.40% 14.0% 14.40%
 

 8/31/84 9.0% 10.63% 14.0% 14.63%
 

 9/28/84 9.0% 10.22% 14.0% 14.22%
 

 See
 
 In Re Lawson Square, Inc.,
 
 61 B.R. 145, 147 (Bankr. W.D.Ark. 1986).
 

 [4]
 

 . Ark. Const. Art. 19, § 13 (1874, repealed 1982).