**Vadis CURRIE, Gregory Dollison, and Brenda Seay, individually and on behalf of a class, Plaintiffs,**

v.

**DIAMOND MORTGAGE CORPORATION of Illinois, individually and on behalf of class, Defendant.**

**No. 87 C 7019.**

United States District Court,
N.D. Illinois, E.D.

Dec. 28, 1987.

Joel M. Hellman, Chicago, Ill., Ralph W. Miller, Jr., Oakbrook, Ill., for plaintiffs.

Myron Cherry, Cherry & Flynn, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

This is an appeal from the judgment of the bankruptcy court dismissing plaintiffs' adversary complaint. *See* 28 U.S.C. § 158(a).

In 1986, plaintiffs received a $46,500 loan from defendant.[1] The loan was secured by residential real estate and the stated interest rate of the loan was 15.5% per annum. The length of the loan was fifteen years. Plaintiffs paid $7,415 for a "net loan origination fee." This fee is equal to approximately 16% of the principal amount of the loan and, assuming it applies, the fee apparently violates § 4.1a of Illinois's General Interest Statute ("GIS"), Ill.Rev.Stat. (1985), ch. 17, ¶ 6406. On defendant's motion to dismiss[2] the bankruptcy court ruled that ¶ 6406 was repealed by implication by § 4 of the GIS, Ill.Rev.Stat. (1985), ch. 17, ¶ 6404. Alternatively, the bankruptcy court held that the relevant portion of § 4.1a was preempted by federal law. It is only necessary to consider the alternative holding. On that ground, the bankruptcy court is affirmed.

Section 4.1a provides in part:

Where there is a charge in addition to the stated rate of interest payable directly or indirectly by the borrower and imposed directly or indirectly by the lender as a consideration for the loan, or for or in connection with the loan of money, whether paid or payable by the borrower, the seller, or any other person on behalf of the borrower to the lender or to a third party, or for or in connection with the loan of money, other than as hereinabove in this Section provided, whether denominated "points," "service charge," "discount," "commission," or otherwise, and without regard to declining balances of principal which would result from any required or optional amortization of the principal of the loan, the rate of interest shall be calculated in the following manner:

The percentage of the principal amount of the loan represented by all of such charges shall first be computed, which in the case of a loan with an interest rate in excess of 8% per annum secured by residential real estate, other than loans described in paragraphs (e) and (f) of Section 4, shall not exceed 3% of such principal amount. Said percentage shall then be divided by the number of years and fractions thereof of the period of the loan according to its stated maturity. The percentage thus obtained shall be added to the percentage of the stated annual rate of interest.

The bankruptcy court held that, as regards the loan involved in this case, § 4.1a's limitation on points is preempted by § 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub.L. 96–221, Title V, § 501, Mar. 31, 1980, 94 Stat. 161, as amended by Pub. L. 96–211, Title II, § 207(b)(11), Mar. 31, 1980, 94 Stat. 144; Pub.L. 96–399, Title III, §§ 308(c)(6), 324(a), (e), Oct. 8, 1980, 94 Stat. 1641, 1647, 1648; Pub.L. 97–35, Title III, § 384, Aug. 13, 1981, 95 Stat. 432

---

1. This case was not certified as a class action. Only the facts concerning the named parties are considered.

2. The bankruptcy judge stated he was applying Fed.R.Civ.P. 12(b)(6) as incorporated by Bankr. Rule 7012(b). At least one court has held, however, that the preemption issue is properly raised as an affirmative defense. *In re Russell,* 72 B.R. 855, 869 (Bankr.E.D.Pa.1987). An affirmative defense would not ordinarily be considered on a 12(b)(6) motion, but there appears to be no contested facts as to the preemption issue and plaintiff does not complain that improper procedures were followed. This court will decide the legal issue that the parties have presented.

**538**

("DIDMCA § 501").[3]

Section 501 provides in part:

(a)(1) The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, *discount points,* finance charges, or other charges which may be charged, taken, received, or reserved shall not apply to any loan, mortgage, credit sale, or advance which is—

(A) secured by a first lien on residential real property, ...;

(B) made after March 31, 1980; and

(C) described in ... 12 U.S.C. § 1735f–5(b),[4] except that.... (Emphasis added).

Section 501 completely overrode state usury limits for federally related mortgages and other financing arrangements which are secured by first liens on residential real property. *In re Lawson Square, Inc.,* 816 F.2d 1236, 1240 (8th Cir.1987). The parties do not dispute that plaintiffs' mortgage is a federally related mortgage to which § 501 applies. They dispute whether § 501 applies to preempt Illinois's limits on points.

The plain language of § 501 preempts state limitations on points for federally related, residential mortgages. Plaintiffs argue, however, that points are essentially the same as prepayment penalties and since prepayment penalty limitations are not preempted, 12 C.F.R. § 590.3(c), limitations on points are also not preempted. Even assuming plaintiffs' argument that points have the same economic effect as prepayment penalties is true,[5] Congress has chosen to make a distinction between them. This conclusion is supported by the plain language of the statute, the legislative history, regulations issued pursuant to § 501, and interpretations by the agency authorized to interpret the statute.

Section 501(a)(1) refers to preemption of state laws "expressly limiting the rate or amount of ... discount points ... which may be charged, taken, received or reserved." Section 4.1a expressly limits consideration that can be charged for a loan whether denominated "points," "discount," or otherwise. The plain language of § 501(a)(1) clearly preempts § 4.1a's limitation on points as regards federally related, residential mortgages.

The Senate Report on DIDMCA states, "In exempting mortgage loans from state usury limitations, the Committee intends to exempt only those limitations that are included in the annual percentage rate. The Committee does not intend to exempt limitations on prepayment charges, attorney fees, late charges or similar limitations designed to protect borrowers." S.Rep. No. 96–368, 96th Cong., 2d Sess. 19, *reprinted in* 1980 U.S.Code Cong. & Admin.News 236, 255. *See also Veytia v. Seiter,* 740 S.W.2d 64 (Tex.Ct.App.1987). Under § 4.1a, points are included in the computation of the annual percentage rate. *See Durant v. Olympic Savings & Loan Association,* 582 F.2d 1090, 1090–91 (7th Cir. 1978). Including points in the annual percentage rate is also the practice under federal law. *See, e.g.,* 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4. Congress obviously intended to distinguish points from prepayment charges, with state restrictions on the former being preempted, but not state restrictions on the latter.

The distinction between points and prepayment penalties is also incorporated into the regulations implementing DIDMCA. *Compare* 12 C.F.R. § 590.3(a) & (b) (which refers to preemption of state legislation on points) with 12 C.F.R. § 590.3(c) (which refers to prepayment charges being excluded from the preemption provisions). In an interpretative ruling, the Federal Home Loan Bank Board found that a state limitation on points, which the state statute defined as "a fee, premium, bonus, *loan orig-*

---

**3.** Section 501 has not been codified, but is reproduced as a Note to 12 U.S.C.A. § 1735f–7 (1980 & 1987 Supp.).

**4.** Loans described in § 1735f–5(b) are referred to as "federally related" loans.

**5.** Plaintiffs' argument ignores the timing distinctions as to when points and prepayment penalties are paid. They, therefore, ignore the time value of money in their computations and the fact that a prepayment penalty, unlike points, is an additional cost of the original loan at the time of refinancing or early payment.

*ination fee,* service charge, or any other charge ... which is charged by the lender *at or before the time* the loan is made *as additional compensation* for the loan" (emphasis added), was preempted by federal law.[6] Interpretation 590–8, 45 Fed.Reg. 8000, 8001 (Fed. Home Loan Bank Bd. 1980). It is clear that the provisions of § 4.1a which limit the amount of points charged on federally related, residential mortgages were preempted by § 501.

Although there is no further discussion by the parties, analysis of the preemption issue does not stop at this point. Congress preempted state limitations in effect as of April 1, 1980, but Congress also provided that states could subsequently readopt those limitations or impose new limitations. DIDMCA § 501(b); 12 C.F.R. § 590.3(b). For a three-year period between April 1, 1980 and April 1, 1983, states had the opportunity to prospectively avoid the preemption contained in § 501(a)(1) by passing legislation or voting in favor of legislation explicitly choosing not to have the provisions of § 501(a)(1) apply. DIDMCA § 501(b)(2); 12 C.F.R. § 590.3(b); *Lawson Square,* 816 F.2d at 1240; *Russell,* 72 B.R. at 867. If no action was taken within the three-year period, the preemption of § 501(a)(1) remains in place until such time as Congress may choose to amend or repeal it. As for limitations on points, a state may adopt a limitation on points at any time after March 31, 1980. DIDMCA § 501(b)(4); 12 C.F.R. § 590.3(b)(3). There does not appear to be any requirement that new limitations on points explicitly refer to DIDMCA as required under § 501(b)(2).

This court has not found any Illinois legislation passed during the three-year period that explicitly overrides the provisions of § 501(a)(1). Although a number of amendments were made to § 4 of the GIS during the applicable period, none of them overrode the § 501(a)(1) preemption. Instead the amendments were consistent with the federal preemption in that no interest rate limit was placed on residential mortgages. *Cf. Lawson Square,* 816 F.2d at 1240.

Also none of these amendments established a new limitations on points. Section 4.1a was last amended in 1978, so it does not fall under the exception in § 501(b)(4) which only applies for statutes enacted after March 31, 1980. Plaintiffs argue the various amendments of § 4 of the GIS did not repeal § 4.1a, but they do not argue, and the court does not find, that amendments to § 4 (after March 31, 1980) readopted § 4.1a

Section 501 preempted any effect § 4.1a may have had on points charged for federally related, residential mortgages entered into after March 31, 1980. Illinois has not subsequently enacted a new limitation on such points. Since plaintiffs' claim is based on a state statute that has been preempted by federal law, they cannot succeed on their claim. It was proper to dismiss their complaint. The court does not decide if § 4.1a was otherwise repealed by § 4.

IT IS THEREFORE ORDERED that the judgment of the bankruptcy court is affirmed.

---

**6.** This interpretation was of the temporary preemption contained in § 105(a) of Pub.L. 96–161, 93 Stat. 1234 (1979). The Bank Board has adopted this and other interpretations of the temporary law as applying to § 501. 12 C.F.R. § 590.100.