The Honorable Billy Joe Purdom State Representative HCR 66, Box 34 Yellville, Arkansas 72687-9605
Dear Representative Purdom:
This is in response to your request for an opinion on a follow-up question to the questions addressed in Op. Att'y Gen. No. 92-150, recently issued by this office, a copy of which is enclosed. Opinion 92-150 discussed the federal preemption of Arkansas usury limits on loans made by the Farmers Home Administration. It was concluded therein that direct loans made by the Farmers Home Administration are not subject to Arkansas usury limits, but rather are subject to the provisions of federal law on the issue.
The question you pose is as follows:
 The above referenced Opinion did not cover Farmers Home Administration guaranteed bank loans. These loans typically include real estate, livestock and equipment. Would the Farmers Home Administration guarantee on bank loans allow Arkansas banks to exceed the Arkansas usury law? If it does allow banks to do so, then what is the formula for determining the rate; if there is such a formula?
It is my opinion that the answer to your question is "no;" state banks making loans which are guaranteed by the Farmers Home Administration are not authorized to exceed the Arkansas usury limits merely by virtue of such guarantee.[1]
The Farmers Home Administration is authorized at7 U.S.C. § 1929(h) to guarantee state bank loans as follows:
 The Secretary [of Agriculture] may provide financial assistance to borrowers for purposes provided in this chapter by guaranteeing loans made by any Federal or State chartered bank, savings and loan association, cooperative lending agency, or other legally organized lending agency.
Federal law provides that the interest rate on such loans shall be "such rate as may be agreed upon by the borrower and the lender, but not in excess of a rate as may be determined by the Secretary." 7 U.S.C. § 1927(5) (real estate loans), and7 U.S.C. § 1946(a)(1) (operating loans). The Secretary has determined that the interest rate for both "farm ownership" and operating loans will be a fixed or variable rate agreed upon by the lender and borrower, but shall not exceed the rate the lender charges its "average farm customer."[2] 7 C.F.R. § 1980.175(e)(1) and (2) (operating loans), and 7 C.F.R. § 1980.180(e)(1) ("farm ownership" loans).
The interest rate for FmHa guaranteed loans thus may not exceed the rate the bank charges its "average farm customer." It appears that such "average farm customer" would ordinarily be entitled to the protection of the Arkansas usury provisions found at Arkansas Constitution, Amendment 60, codified at Arkansas Constitution, art. 19, § 13. This ceiling placed by the Secretary of Agriculture appears, therefore, to link locally applicable usury limits to FmHa guaranteed loans.
Other regulations adopted by the Secretary of Agriculture support this conclusion. It is provided at 7 C.F.R. § 1980.45 that:
 In addition to the specific requirements of this subpart, proposals for facilities financed in whole or in part with an FmHa loan or guarantee will be coordinated with all appropriate Federal, State and local Agencies in accordance with the following:
 (a) Compliance with special laws and regulations. Applicants and/or lenders will be required to comply with any Federal, State or local laws, regulatory commission rules, ordinances, and regulations which are presently in existence or may be later adopted which affect the project including, but not limited to:
 (1) Organization and authority to design, construct, develop, operate, and/or maintain the proposed facilities;
 (2) Borrowing money, giving security therefore, and raising revenues for the repayment thereof. . . . [Emphasis added.]
This regulation, on its face, appears to require compliance with any state laws relative to the borrowing of money, which presumably would include state usury laws.
Finally, and most persuasive, 7 C.F.R. § 1980.11 provides that "[t]he Loan Note Guarantee or Contract of Guarantee will be unenforceable by the lender to the extent any loss is occasioned by violation of usury laws. . . ." This provision perforce refers to state usury limits and thus provides that the FmHa guarantee is unenforceable to the extent state usury limits are violated. This provision would be unnecessary if state usury limits were not applicable to FmHa guaranteed loans.
It is therefore my opinion that the answer to your question is "no;" state banks may not exceed Arkansas usury limits solely by virtue of a FmHa guarantee. Resolution of your second question is therefore unnecessary.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] It is conceivable that some farm loans made by federally insured state banks would fall under the provisions of12 U.S.C. 1735f-7, if such loans are secured by a first lien on the types of "residential real property" described in that section. Seegenerally, Op. Att'y. Gen. No. 88-216, a copy of which is enclosed. Federal law preempts state usury limits on such loans and sets no ceiling on the interest rates which may be charged for them. See FirstSouth v. Lawson Square, Inc.,816 F.2d 1236 (8th Cir. 1987). It is my understanding, however, that most FmHa guaranteed loans would not fall within the provisions of this statute.
[2] "Average farm customers" are defined as "those conventional borrowers who are required to pledge their crops, livestock and other chattel and real estate security for the loan." The phrase does not include high risk farmers with limited security and management ability who are generally charged a higher interest rate by conventional agricultural lenders. Neither does it include low risk farm customers who obtain financing on a secured or unsecured basis who have as collateral items such as savings accounts, time deposits, certificates of deposit, stocks and bonds and life insurance which they are able to pledge for the loan. 7 C.F.R. § 1980.175(e)(2).