# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3302

_____

| | | |
|---|---|---|
| Deanthony Thomas; Susan Jelinke-Thomas; Steven M. Rich, | * | |
| | * | |
| | * | |
| Appellants, | * | |
| | * | |
| v. | * | |
| | * | |
| US Bank National Association ND; | * | |
| Ace Securities Corp. Home Loan | * | |
| Trust 1999-A Asset Backed Notes, | * | |
| Series 1999-AA; U.S. Bank N.A.; | * | |
| Wilmington Trust Company; | * | Appeal from the United States |
| FirstPlus Home Loan Owner Trust | * | District Court for the |
| 1996-2; FirstPlus Home Loan Owner | * | Western District of Missouri. |
| Trust 1996-3; FirstPlus Home Loan | * | |
| Owner Trust 1996-4; FirstPlus Home | * | |
| Loan Owner Trust 1997-1; FirstPlus | * | |
| Home Loan Owner Trust 1997-2; | * | |
| FirstPlus Home Loan Owner Trust | * | |
| 1997-3; FirstPlus Home Loan Owner | * | |
| Trust 1997-4; FirstPlus Home Loan | * | |
| Owner Trust 1998-1; FirstPlus Home | * | |
| Loan Owner Trust 1998-2; FirstPlus | * | |
| Home Loan Owner Trust 1998-3; | * | |
| FirstPlus Home Loan Owner Trust | * | |
| 1998-4; FirstPlus Home Loan Owner | * | |
| Trust 1998-5; The Associates; CIT | * | |
| Group; Contimortgage Corporation; | * | |
| Goleta National Bank; Master | * | |
| Financial; Norwest Home | * | |
| Improvement, Inc.; PSB Lending; | * | |
| Residential Funding Corporation; | * | |

Household Finance Corporation;     *
Challenge Realty; German American  *
Capital Corporation; Sovereign Bank;  *
Pain Webber Real Estate Securities  *
Inc.; UBS Real Estate Securities, Inc.;  *
Countrywide Home Loans, Inc.;      *
Banc One Financial Services Inc.;    *
Federal Deposit Insurance          *
Corporation, as Receiver of PFF Bank;  *
Western Interstate Bancorp,         *
                                    *
           Appellees.               *

_____

Submitted: April 13, 2009
Filed: August 07,2009

_____

Before MURPHY, HANSEN, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Deanthony Thomas, Susan Jelinke-Thomas, and Steven M. Rich (collectively Thomas) brought claims in Missouri state court against a number of banks and lending institutions (collectively the lenders) alleging violations of the Missouri Second Mortgage Loans Act (MSMLA), Mo. Rev. Stat. §§ 408.231-.241, arising out of loans originated by FirstPlus Bank (a California lending institution which is now defunct) and subsequently purchased by the lenders. The lenders removed the case to federal court arguing the state law claims were completely preempted by the Depository Institutions Deregulation and Monetary Control Act (DIDA), 12 U.S.C. § 1831d. Agreeing with the lenders, the district court denied Thomas's motion to remand to state court and then dismissed the claims. Thomas now appeals. We reverse with instructions to remand this case to state court.

-2-

# I

Thomas and the other appellants are Missouri homeowners who obtained "high loan-to-value" second mortgages (reflecting a total debt of 125% of the appraised value) on their homes from FirstPlus Bank. FirstPlus Bank was a federally insured, state-chartered bank when the loans were made. FirstPlus Bank became defunct, and the loans were purchased or assumed by other banks as assignees, including some national banks.

In June 2004, Thomas brought suit in Missouri state court on behalf of himself and others similarly situated against thirty-three assignee banks of FirstPlus alleging the loans they had received violated the MSMLA, which places limits on the type and amount of closing costs and fees a lender can charge on residential second mortgage loans secured by Missouri real estate.[1]

Specifically, Thomas alleged the subject loans violated Missouri law because: 1) the borrowers were charged nonrefundable finder's fees or broker's fees which were not allowed by or in excess of the fees allowed by the MSMLA; and 2) FirstPlus charged certain closing costs and fees on behalf of third parties which were in excess of the costs actually charged by those third parties and then retained the difference. Thomas sought to recover the interest paid on the allegedly unlawful second mortgage loans and an order barring the collection of additional interest. Notably, none of the

---

[1]Missouri law allows lenders to charge a higher interest rate for second mortgage loans than the general usury rate applicable to most loans. Compare Mo. Rev. Stat. § 408.030.1 (generally allowing a rate of 10% or the market rate, whichever is higher) with Mo. Rev. Stat. § 408.232.1 (prior to 1998, setting a maximum rate of 20.04% on second mortgage loans, and setting *no* limit on second mortgage interest rates after 1998). The limits on closing costs and fees provided for in the MSMLA act as a trade-off for allowing lenders to charge a higher interest rate on second mortgage loans.

subject loans violated Missouri law with respect to the maximum interest rate chargeable on a second mortgage loan, which exceeded the rate allowed by federal law pursuant to DIDA.

In August 2004, the defendant banks removed the case to federal district court. The banks alleged removal was proper because FirstPlus, the originator of the loans, was a federally-insured, state-chartered bank and DIDA (which applies to federally-insured, state-chartered banks) completely preempted the state law claims brought under the MSMLA. The banks relied primarily upon the Supreme Court's decision in Beneficial National Bank v. Anderson, 539 U.S. 1 (2003), which held that the National Bank Act (NBA), 12 U.S.C. §§ 85-86, completely preempted state law usury claims against national banks. Id. at 10-11. The banks alleged the similarity in language between DIDA and the NBA compelled the conclusion that DIDA, like the NBA, created the exclusive federal remedy for usury claims against federally-insured, state-chartered banks.

Thomas filed a motion to remand the case to state court. He argued the language of DIDA differed in material respects from the language in the NBA, and DIDA only preempted state usury laws in limited circumstances, that is, when the state laws set a lower allowable interest rate than that allowed by federal law. Because Missouri law allowed a higher allowable interest rate than the rate set forth in DIDA, preemption was not triggered. The district court disagreed and denied the motion to remand, concluding DIDA provided the exclusive remedy for usury claims against federally-insured, state-chartered banks. Thereafter the banks brought a motion to dismiss the case, which the district court granted.

Thomas filed a timely appeal. On appeal, he renews his argument that DIDA differs in material respect from the language of the NBA, and preemption does not apply in circumstances where state law allows a higher interest rate than the interest rate set forth in DIDA. The banks renew their claim as to the statutory language in

DIDA being the same as the NBA, and federal law completely preempts the state law claims brought here. The national bank defendants alternatively argue that the NBA should apply whether they are the originator of a loan or purchase a loan as an assignee, and therefore completely preempts the claims brought against them even if DIDA does not. Finally, some of the assignee banks argue the named plaintiffs lacked standing to sue them because none of the named plaintiffs (as opposed to unnamed class member plaintiffs) have loans that have been assigned to them.

## II

The district court's denial of the motion to remand the case to state court is reviewed de novo, Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1004 (8th Cir. 2006), as is the district court's dismissal of the case, Harris v. The Epoch Group, L.C., 357 F.3d 822, 824-25 (8th Cir. 2004).

## A

The general rule is when a claim filed in state court alleges only state law claims, the existence of a federal defense, e.g., preemption, is not enough to support the removal of the case to federal court. Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998). An exception to this rule is when the preemptive force of a federal statute completely displaces state law and it is clear Congress meant the federal statute to be the exclusive cause of action for the type of claim asserted. Beneficial Nat'l Bank, 539 U.S. at 8. Complete preemption, as opposed to ordinary or conflict preemption, is rare, however, and only applies if the "federal statutes at issue provide[] the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." Id.

Complete preemption does not exist here because the language of DIDA, unlike the NBA, does not reflect Congress' intent to provide the exclusive cause of action for

a usury claim against a federally-insured state-chartered bank. To the contrary, a close examination of the statutory language indicates Congress very clearly intended the preemptive scope of DIDA to be limited to particular circumstances.

Two provisions of DIDA are at issue – the subsection discussing the circumstances under which a federally-insured state-chartered bank may charge the interest rate allowed by federal law notwithstanding state law to the contrary, 12 U.S.C. § 1831d(a) (the substantive provision), and the subsection setting forth a consumer's remedy when a bank charges interest in excess of that allowed by DIDA, 12 U.S.C. § 1831d(b) (the remedy provision). The substantive provision is set forth as follows:

> In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection, such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

12 U.S.C. § 1831d(a).

The plain language of the statute clearly indicates the interest rate allowed by federal law only comes into play "*if* the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be

permitted to charge in the absence of this subsection." Id. (emphasis added). In other words, when the interest rate allowed by state law exceeds the interest rate set forth in DIDA, the federal statute does not apply. The limited nature of the preemptive effect the federal statute has on state law is emphasized by the qualifying phrase added to the statute's preemption language: "notwithstanding any State constitution or statute which is hereby preempted *for the purposes of this section*." Id. (emphasis added). In other words, conflicting state constitutions or statutes are not preempted for every and all purposes, but only for purposes of "this section."

The remedy provision is set forth as follows:

If the rate prescribed in subsection (a) of this section exceeds the rate such State bank or such insured branch of a foreign bank would be permitted to charge in the absence of this section, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank or such insured branch of a foreign bank taking, receiving, reserving, or charging such interest.

12 U.S.C. § 1831d(b).

This remedy provision, as does the substantive provision, clearly indicates the limited nature of the federal statute's preemption of state law, by stating the federal remedy only applies "*[i]f* the rate prescribed in subsection (a) of this section exceeds the rate such State bank or such insured branch of a foreign bank would be permitted to charge in the absence of this section." Id. The limited scope of preemption is

emphasized by the subsection's phrase stating "and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section" which follows the conditional circumstances under which the statute applies, i.e., *if* the federal rate exceeds the rate allowed by state law. In other words, the plain language of the statute ties the preemptive effect it has on state law to the condition being met. By stating "and such state fixed rate is thereby preempted," the statute plainly indicates the state rate is only preempted "if" exceeded by the rate prescribed in the federal statute.

A similar statute was interpreted by this court in <u>Firstsouth, F.A. v. Lawson Square, Inc. (In re Lawson Square, Inc.)</u>, 816 F.2d 1236 (8th Cir. 1987), involving section 1730g(a) of DIDA, which applies to federally insured savings and loan associations rather than federally insured, state-chartered banks. The language of the two statutes is, however, identical. The holding in <u>Lawson Square</u> makes clear that when the federal preemption language does not "fit," state law applies. <u>See</u> <u>id.</u> at 1239.

In <u>Lawson Square</u>, the interest rate allowed by Arkansas law exceeded the applicable interest rate set forth in DIDA. The rate allowed by federal law under DIDA fluctuated between 9.72% and 10.22% at all applicable times, while the rate otherwise allowed by Arkansas state law fluctuated between 13.5% and 14%. <u>Id.</u> at 1238. Because the rate allowed by DIDA did *not* exceed the rate allowed by state law, the court correctly reasoned the federal statute did not apply:

> [W]e note immediately that the very first clause of Section [1730g(a)] reads as follows: "[i]f the applicable rate prescribed in this section exceeds the rate an insured institution . . . would be permitted to charge in the absence of this section . . .". The "applicable rate" referred to is the federal discount rate plus one per cent.; the rate that would be permitted in the absence of this section is the Arkansas Constitution's present limit of federal discount rate plus five per cent. Attempting to substitute these terms for the words which represent them produces a false statement, for in fact the "applicable rate" does not exceed the

-8-

"permitted rate." That being the case, we need go no further in Section [1730g(a)]; *we know that it does not apply in this instance*.

Id. 1239-40 (emphasis added).

In this case, the interest rate allowed by Missouri law for second mortgages was either as high as 20.4% or *unlimited* at all applicable times, well in excess of the rate allowed by DIDA. See Mo. Rev. Stat. § 408.232.1 (setting a maximum rate of 20.04% on second mortgage loans prior to 1998, and setting **no** limit on second mortgage interest rates after 1998). As a result, the federal statute does not apply. And, more significantly, for complete preemption purposes, the remedy set forth in the federal statute does not apply. Complete preemption only applies when it is clear Congress meant for the federal statute to "provide[] the *exclusive* cause of action." Beneficial Nat'l Bank, 539 U.S. at 8 (emphasis added). By its plain and unambiguous language, the remedy set forth in § 1831d(b) only applies in limited circumstances, and those circumstances are when the federal rate exceeds the rate allowed by state law. Because such a circumstance was not present in this case, just as it was not present in Lawson Square, the federal remedy does not apply and therefore is not the exclusive remedy. Accordingly the district court erred when it denied Thomas's motion to remand this case to state court.

We note other federal courts have interpreted the language in § 1831d differently. In Discover Bank v. Vaden, 489 F.3d 594 (4th Cir. 2007), rev'd on other grounds __ S.Ct. __ (March 9, 2009) (2009 WL578636), the Fourth Circuit held DIDA, like the NBA, completely preempts state usury claims against federally-insured, state-chartered banks. Id. at 605. In so holding, the Fourth Circuit quoted the relevant provisions of § 1831d(a) in the following manner:

> In order to prevent discrimination against State-chartered insured depository institutions . . . with respect to interest rates . . . such State bank[s] . . . may, notwithstanding any State constitution or statute which

is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest . . . at the rate allowed by the laws of the State . . . where the bank is located.

Id. at 604.

Comparing this redacted version of the statute with the full version of the statute does reveal the language eliminated by the Fourth Circuit's second set of ellipsis (emphasized below) is critical to the substantive meaning of the statute:

In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest rates, *if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection*, such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, whichever may be greater.

12 U.S.C. § 1831d(a).

We will not alter the statutory language in such manner to support a conclusion as to DIDA completely preempting state law while providing the exclusive federal remedy for state usury claims against federally-insured, state-chartered banks. Rather, the unabridged language of the statute, which is both the starting and ending point of our analysis, see Integrity Floorcovering, Inc. v. Broan-Nutone, LLC, 521 F.3d 914,

-10-

918 (8th Cir. 2008) (indicating that when "the plain language of the statute controls . . . we need not consider the parties' varying interpretations of legislative history"), clearly establishes the limited effect DIDA has on such claims.

## B

Alternatively, the national banks argue the claims against them are completely preempted under sections 85 and 86 of the NBA. We disagree. The national banks did not originate the loans at issue, but rather are assignee banks who subsequently purchased the loans. As assignees, they are subject to all the claims which could have been brought against the originator of the loan. See 15 U.S.C. § 1641(d) ("Any person who purchases or is otherwise assigned a [tainted[ mortgage . . . shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the [original lender]."). To hold otherwise would allow an originating bank to cleanse an otherwise illegal loan merely by assigning it to a national bank.

Finally, some of the defendant banks (non-holder banks) argue they are not purchasers or assignees of any FirstPlus Bank second mortgage loans subject to the MSMLA, and therefore the plaintiffs lack standing to bring the claims against them. We decline to address this issue, preferring it be raised in the first instance upon remand to state court.

## III

The judgment of the district court is reversed and the case is remanded to the district court with instructions to reinstate the claims and remand the case to state court.

_____